14127

DAVIS v. ACACIA MUTUAL LIFE INS. CO.

(181 S. E., 12)

*Messrs. McEachin & Townsend,* for appellant,

*Messrs. Thomas, Lumpkin & Cain, Chas. W. Muldrow* and *Howard W. Kacy,* for respondent,

August 13, 1935.

The opinion of the Court was delivered by Mr. CHIEF JUSTICE STABLER.

On May 1, 1906, the Masonic Mutual Relief Association, predecessor of the Acacia Mutual Life Insurance Company, issued to one James P. Davis, insurance in the sum of $1,000.00 written on the twenty-payment life plan. On January 17, 1927, after the twenty-year period had expired, Davis borrowed from the company $566.00, the full loan value of the policy, and executed in its favor a note in that amount, bearing interest at 5 per cent. On February 17, 1928, the defendant canceled the insurance, claiming that the principal amount of the loan with interest to December 31, 1927, exceeded the reserve value of the policy as of that date. On May 19, 1933, the insured died; and this action was then brought by the plaintiff, the named beneficiary, for damages, both actual and punitive, in the sum of $3,000.-00, for the asserted fraudulent cancellation by the company of the contract of insurance, it being alleged that "the reserve value and the dividends due as of December 31, 1927, were sufficient to keep the said policy in full force and effect"; and that "the plaintiff as beneficiary of the said policy, whose interest was absolute during its assignment to the defendant, received no notification of the lapse of the said policy."

The defendant, while admitting the issuance of the insurance, alleged that the rights of the plaintiff as beneficiary were never vested, and that the company canceled the policy, as it had a legal right to do under the terms of the loan note, when the loan and interest exceeded the reserve.

On trial of the case, Judge Sharkey directed a verdict for the defendant, and later refused to grant the plaintiff's motion for a new trial.

The appellant, plaintiff below, states the following questions as raised by her exceptions: (1) Was the policy properly assigned, and did the plaintiff as beneficiary have a vested interest in it during its assignment? (2) Was either the insured or the beneficiary bound by the notice mailed the insured by the company on January 16, 1927? (3) Was interest on the note due on May 1, 1927, and, if so, was its payment on that date waived? (4) Do the terms of the policy or of the loan note control? (5) Was there evidence of fraud in the cancellation of the insurance? These we will consider in the order named.

I. As to cash loans, the policy provides: "Upon previous written request at the end of the third of any subsequent anniversary of the issuance of this policy, and at other times at its convenience, and upon a valid and satisfactory assignment of this policy as security, the Association will loan, at five per cent. interest, the amount shown in writing in the table of cash loans hereon opposite the number of years the policy may then have been in force, less any existing indebtedness of the holder to the Association on account of this policy; provided the premiums are paid up to the anniversary of the insurance next succeeding the date when the loan may be obtained."

And as to change of beneficiary: "This policy is issued with the express understanding that the insured may, providing the policy has not been assigned, with the approval of the Association endorsed thereon, change the beneficiary or beneficiaries at any time by filing with the Association a written request, duly acknowledged and accompanied by this policy, such change to take effect upon the endorsement of the same upon the policy by the Association; the Association will not, however, assume responsibility for the validity of any assignment or change of beneficiary."

It is now the settled law of this jurisdiction, and of most jurisdictions, that where a right to change the beneficiary has been reserved to the insured in the policy, the named beneficiary has a mere expectancy and

not a vested right or interest. *Bost v. Insurance Company,* 114 S. C., 405, 103 S. E., 771; *Antley v. Life Insurance Company,* 139 S. C., 23, 137 S. E., 199, 60 A. L. R., 184; *Livingston v. Life Insurance Company,* 173 S. C., 87, 174 S. E., 900, 902. But this expectancy, while held subject to the exercise of the right of the insured to change the beneficiary, is entitled to the protection which the policy gives it—not to be defeated except in the contract method; that is to say, where the policy prescribes a plan for changing the beneficiary, there must be at least a substantial compliance therewith. *Wannamaker v. Stroman,* 167 S. C., 484, 166 S. E., 621.

The appellant contends, however, that the decisions cited and relied on by the respondent are not in point; that in the *Antley case, supra,* which Judge Sharkey held was decisive of the issue here involved, this Court was not called upon to consider the clause in the provision of the policy for changing the beneficiary, "providing the policy has not been assigned," as the appeal in that case merely challenged the validity of any assignment without the consent of the beneficiary; that the quoted clause was evidently inserted by the company "to secure the cooperation of the beneficiary in keeping the policy alive after assignment," and that "once the policy is assigned the rights of the named beneficiary become vested in the remainder" of it, "which cannot become divested during assignment and which entitle the beneficiary to notification of impending forfeiture or cancellation."

Even conceding as true that the point here made was not passed upon in any of the cases cited and relied on by the respondent, and that, therefore, these decisions are not controlling, we think, nevertheless, upon mature deliberation, that the appellant is wrong in her contention that the quoted clause, "providing the policy has not been assigned," applies where a loan is made the insured by the company on the policy. In such a case one of the contracting parties is dealing with the other party to the agreement, and not with a stranger. When the contract of insurance

before us was entered into in 1906, the company agreed with Davis that it would make loans to him, as provided therein, "upon a valid and satisfactory assignment of this policy as security." As between the parties, it being reserved to the insured to change the beneficiary at will, the right to obtain such loans was paramount to any right of the beneficiary who, under the terms of the insurance contract, had only an expectancy which could be defeated at any time during the life of the insured. In such a case, as stated in *Underwood v. Jefferson Standard Life Insurance Company*, 177 N. C., 327, 98 S. E., 832, 835, "the policy had not been 'assigned,' in the sense that word is used in the contract. The assignment spoken of is one to a stranger, and not one to the company; for the latter could waive any objection to the change of the beneficiary, and did so by assenting to the one which was made in this case. Where a stranger is assignee, his rights could not materially be affected in the absence of his consent, and consequently the company, without authority for that purpose, could not waive for him. The provision was inserted to prevent confusion or complication, and to relieve the company from any danger of liability growing out of changing the beneficiary after the policy had been assigned. These reasons, of course, would not apply where the assignment has been made to the company itself."

Nor is there any merit in appellant's contention that the policy was not properly assigned because the company required the beneficiary to sign the loan note given in 1909 and again in 1913, but did not require her to do so for the loan made in 1927. The beneficiary, as we have stated, had no vested interest in the policy, and there was no legal necessity, therefore, that she execute the note in order to make the assignment a valid or proper one.

II. The policy provides that "the reserve on this contract shall be maintained according to the American Experience Table of Mortality, and three and one-half per centum per annum compound interest from the first anniversary

of its issue." The loan note executed by the insured on January 17, 1927, contained the following provisions:

"First, That this loan shall bear interest at the rate of 5 per cent. per annum, payable at the time of making the loan, for the period to the end of the current policy year and thereafter at the end of each policy year annually in advance, unpaid interest to be added to the loan and draw interest at the same rate.

"Second, That if at any time the amount of the loan and the unpaid interest thereon, together with other indebtedness on above mentioned policy shall equal or exceed the amount of reserve thereon, then the policy shall automatically terminate and the Association be relieved from all liability thereunder, and the said reserve shall be used by the Association in payment and liquidation of the whole indebtedness against said policy.

"Third, That the undersigned member shall have the right, at any time while said policy is in full force and effect, to pay the said Association the full amount of this loan, together with interest, and terminate this agreement.

"Fourth, That by this agreement said policy is assigned to the Association to the extent of the amount of this loan with accrued interest."

According to the testimony, when the full loan value of $566.00 was made to the insured by the company on January 17, 1927, interest was paid to May 1, 1927, the next anniversary of the policy, by deducting it from the amount borrowed. On the last-named date, the insured failed to pay the interest, which, according to the terms of the loan note, was payable in advance; and on December 31, 1927, the principal sum, together with the accrued interest, amounted to $584.37, while on the same date the reserve value, determined in the manner prescribed by the policy, was only $574.14, there being then an excess of indebtedness, as is seen, over the reserve of $10.73. In this situation, the company wrote the insured on January 16, 1928, to the effect that unless the interest was paid within thirty-one days from

that date, his policy, under the terms of the loan contract, would immediately lapse. It appears that Davis disregarded this notice, never paid any interest, or ever did anything about the matter, although he lived five years thereafter.

We think that the foregoing facts, as disclosed by the evidence, were sufficient to make the notice binding on the insured, and when he failed to respond thereto by payment of the interest as required under the loan contract, the company could execute, as it did, under its agreement with him, a valid cancellation of the policy. In regard to the beneficiary, as her interest was merely an expectancy, which was not changed by the assignment of the policy to the company as security for the loan, as we have held in our discussion of the first question, she was not entitled to any notice whatsoever.

III. The conclusion that interest, under the terms of the loan contract, was due on the note on May 1, 1927, would seem inescapable. As above indicated, the policy provided that the company would lend to the insured, at 5 per cent. interest, a designated amount, "upon a valid and satisfactory assignment of this policy as security." The loan note of 1927 provided, as is seen, that interest should be at 5 per cent. per annum, "payable at the time of making the loan, for the period to the end of the current policy year and thereafter at the end of each policy year annually in advance." As the sum borrowed on January 17, 1927, was the full loan value of the policy, the interest, from that date to May 1, 1927, the beginning of the new policy year, was paid, as we have said, by deducting it from the amount of the loan. Unquestionably, therefore, on May 1, as provided by the loan contract, interest for one year was then due and payable. Counsel for the appellant offer as an excuse for the insured's failure to pay the interest that he may not have read the note, but thought that the company would take care of him, as it had theretofore done, by adding the interest to the loan. This suggestion, however, is without merit; even if the testimony showed,

which it does not, that Davis neglected to read the note, we apprehend that it would not be urged that any one should be permitted to benefit by his negligence.

It is true, as contended, that interest on loans made the insured by the company prior to the year 1927 was usually added to the amount of the loan. This, as is shown by the evidence, was and could be done for the reason that the reserve at such times was sufficient to enable the company to charge the interest against the loan value. In fact, to prevent the lapse of the policy, it would seem that the company, under the provisions of the loan note, was bound to do so. When Davis borrowed, in 1927, the full loan value of the policy, the company, when he failed to pay the interest due on May 1, 1927, continued to charge it against the cash value until December 31, 1927, at which time the total indebtedness with interest exceeded the reserve, and the policy then lapsed under the terms of the loan contract. in the circumstances stated, it may not soundly be held that what had been done by the defendant with regard to other loans amounted to waiver of its right to collect the interest on the 1927 note when and as due and payable under its terms.

IV. The appellant argues that the provisions of the policy and those of the loan note are not in accord, and that the former, which do not require interest to be paid in advance or permit forfeiture for its non-payment, must control, citing *Brown v. Insurance Company*, 114 S. C., 202, 103 S. E., 555, in support of her contention. It does not appear, however, from an examination of the decision in the *Brown case*, that it is controlling of the question here raised. It was there held that the beneficiary had a vested interest in the policy, and that the insured and the insurer could not impair such right by a subsequent contract to which she was not a party; and that she was not, therefore, bound by a clause in a premium note to the effect that the failure to pay the note when due would render the policy *ipso facto* null and void.

In the case at bar, as we have held, the beneficiary had no vested interest in the insurance, but merely an expectancy. Furthermore, it does not appear that the provisions in the policy are in conflict with those contained in the note, as contended by the appellant. While the policy alone does not provide a plan of foreclosure, the insurer agrees with the insured to make him loans, as therein indicated, with interest at 5 per cent., upon a valid and satisfactory assignment of the policy as security. No form of assignment or of the loan note is set out, these things being left to the agreement of the parties in the execution of the loan note itself. It seems clear, therefore, that the provisions embodied in the policy and those contained in the loan note together make up the completed contract of loan between the parties, and must be considered together in determining and fixing their rights thereunder. Of course, if there were any conflict between the two, the policy would unquestionably control.

In *Livingston v. Life Insurance Company, supra,* this Court quoted with approval the following from *Hammond v. Volunteer State Life Insurance Company,* 47 Ga. App., 472, 170 S. E., 681: "A stipulation in a paid-up policy of life insurance and a loan agreement thereon, providing for what amounts to a method of foreclosure, after the giving of the prescribed notice, by the cancellation of the policy and the application of the cash value thereof to the payment of the loan whenever the past-due principal with the interest thereon equals or exceeds the actual cash value of the policy (as distinguished from some amount arbitrarily fixed by the insurer without regard to the actual value), is valid and does not contravene public policy or amount to confiscation or to an agreement for the exaction of a penalty for nonpayment of the indebtedness, since, under such a contractual procedure, the insured realizes the full amount of all his rights and interest in the policy at the time of such cancellation."

In the *Livingston case* it was also said: "We have not been cited to any statute of our state similar, perhaps, to statutes of other states, providing by law for the foreclosure of a loan on a life insurance policy. Neither have we been referred to any case in our decisions which we think is in any way controlling of the question before us. The matter of the manner of foreclosure appears, therefore, to be one which may be properly the subject of contract between the parties, the insurer, and the insured. The contract here provided that method, namely, when the amount of the outstanding loan, and the interest due thereon, would exceed the amount of the cash surrender value of the policy, the insurer could cancel the policy upon thirty days' notice by mail to the insured of the intended cancellation, if the insured failed to pay the interest due on the loan. The method agreed to by the insured, was followed."

V. This question must be answered in the negative. ▉ We find no evidence in the record tending to support the contention of the appellant that the policy of insurance was fraudulently canceled by the company.

We are of the opinion that the trial Judge, on the whole case, properly directed a verdict for the defendant.

The judgment, therefore, of the Court below is affirmed.

Messrs. Justices Carter, Bonham, Baker and Fishburne concur.