14217

MIDDLETON v. VOLUNTEER STATE LIFE INS. CO.

(184 S. E., 151)

418

*Messrs. Knight & Arant,* for appellant,

*Messrs. Leppard & Leppard* and *C. L. Hunley,* for respondent,

February 5, 1936.

*Per curiam.*

In 1913, the Southern States Life Insurance Company insured the life of one Olin M. Middleton in the sum of $1,-000.00, the plaintiff, his wife, being named as beneficiary. The seventeenth annual premium of $28.91, due November 1, 1929, was duly paid, which carried the policy for one year from that date, but no further payment of any kind was made by the insured or by any one acting for him.

In January, 1930, Middleton borrowed from the company $386.00, the full loan value of the policy, and executed in its favor a note for that amount due November 1, 1930, interest being paid in advance by deducting it from the sum borrowed. It is not disputed that notices on the company's regular forms, itemizing the premium and the loan interest, were mailed to the insured before and after the due date named, and that on or about November 20th, a final notice was sent him, to the effect that his policy would expire after the lapse of the grace period of thirty-one days. The company received no reply to any of these letters, and the insured did nothing about the matter.

In March, 1931, the defendant in the present case assumed "all policy contracts of Southern States Life Insurance Company, now outstanding and in force, according to their terms." Middleton died in September of the same year. The company refused to pay the claim made by the plaintiff as beneficiary under the policy, and this action was then brought to enforce its collection. On trial of the case, the defendant's motion for a directed verdict was denied and the

jury found for the plaintiff $614.00, with interest. A new trial was later refused, and the case is now here on appeal.

There are eleven exceptions, but only two questions, according to counsel for the appellant, need be answered: (1) Did the trial Judge commit error in failing to construe the loan contract, made up of the policy and the note, and in refusing to direct a verdict for the defendant? (2) Was the testimony of the witness Douglass admissible?

In an elaborate brief filed for the respondent, her counsel have advanced numerous reasons why the judgment should be sustained, and have submitted a mathematical formula which they say demonstrates that the policy, under its terms, was in full force and effect at the time of the death of the insured. On the other hand, counsel for appellant attempt to mathematically show that the contract of insurance had lapsed nearly a year before Middleton died. To the several contentions made, we will give such consideration as they may merit.

We quote here the following language contained in the "Loan and Surrender Privileges" clause of the policy, relied on by the appellant: "Provided all premiums shall have been paid up to the then next anniversary of the policy, the Company, at any time on demaand, after the policy has been in force one full year from the payment of the first annual premium, will advance against the sole security of the policy, up to the respective sums mentioned in the Table of Loans herein set forth, less any indebtedness to the Company under the Guaranteed Premium Advance Privilege hereinbefore set forth. The interest upon all such indebtedness shall be at the rate of six per cent per annum, payable in advance. * * * "

Also, the "Automatically Non-Forfeitable" clause, relied on by the respondent: "After two full annual premiums shall have been paid on the policy, if any premium hereon, or other indebtedness, shall not be paid when due or within the period of grace hereinafter mentioned, said premium and

successive premiums or other indebtedness, as they become due, shall be charged as automatic policy loans at six per cent interest, payable annually in advance, as long as the amount of the then loan value, in accordance with the loan privilege of the policy and the Table of Loans hereinafter set forth, are sufficient to cover such loan and all other indebtedness to the Company. If at any time the amount of the then loan value, less all indebtedness to the Company, be not sufficient to pay the entire premium then due, such value shall be used to pay the premium for a proportionate period. No grace will be allowed under this provision. At any time while the policy is thus continued in force, payment of premiums may be resumed without any evidence of insurability being required by the Company."

And this provision: "Any premium, due hereunder, may be paid semi-annually or quarterly at the option of the insured, in accordance with the Company's tables of semi-annual and quarterly premiums."

In consideration of Question (1), it should be kept in mind that the applicable provisions of the policy and those contained in the loan note together make up the completed contract of loan between the parties, and must be considered together in determining and fixing their rights thereunder, the provisions of the policy prevailing when in conflict with those of the note. *Davis v. Acacia Mut. Life Ins. Co.,* 177 S. C., 321, 181 S. E., 12. Applying here these controlling principles, it is clear that interest on the loan made the insured was payable, under the contract of loan, in advance. This being true, on November 1, 1930, interest for one year, amounting to $23.16, was then due and payable. Also, on that date, the beginning of the new policy year, there was due an annual premium—unless the insured elected to pay quarterly or semi-annually—of $28.91. On the same date, too, as shown by the table of guarantees, the loan value of the policy was $419.00, $33.00 more than the amount of the loan which the insured had with the company. The real question in the case, therefore, is: Was there suffi-

cient loan value to extend the life of the policy to the date of the insured's death, September 6, 1931?

The appellant contends that before an increased loan value at the end of the seventeenth year was available, the insured was required to pay the eighteenth premium of $28.91, which was due November 1, 1930; and also to pay the interest, $25.14, on the new loan of $419.00, making a total of $54.05. We are not in entire agreement with this view. The company was bound, under the nonforfeitable clause of the policy, to charge, under the conditions named, any premium or other indebtedness, not paid by the insured when due or within the grace period, as automatic policy loans, as long as the amount of the then loan value was sufficient to do so. Furthermore, although it does not appear that Middleton had exercised the option given him, the premiums could be paid quarterly or semi-annually. Hence, when the insured, on November 1, 1930, failed to pay the interest and the premium then due, the increased loan value of the policy was available for that purpose. As already indicated, on that date such value was $33.00; and this sum, as will be seen, was sufficient to pay the annual interest and the first quarterly premium, which would extend the life of the policy to February 1, 1931.

But counsel for the respondent claim more than that. They say that, after the first quarterly premium was thus paid, there was a "quarterly accrual of loan value," February 1, 1932, which could be applied to the payment of the second quarterly premium, and so on, until the life of the policy was extended beyond the death of the insured. This claim, however, is clearly without merit. It cannot be sustained under the "Loan and Surrender Privileges" clause of the policy, whether that clause is construed alone or in connection with other pertinent provisions of the insurance contract.

Nor do we agree with the respondent that the defendant waived its right to declare the policy forfeited for nonpayment of the premium and of the in-

terest on the policy loan. The testimony relied on to sustain this contention was that of the plaintiff herself, who stated that the insured, as she recollected, was late three times, "somewhere in the years '22 to '25," in the payment of premiums. Clearly, it could not be held that this vague statement of the witness made a showing of waiver. Furthermore, it is undisputed that notices were mailed to the insured reminding him of the due date of the premium and interest and warning him that his policy would lapse if payment was not made.

The several additional contentions of the plaintiff why the judgment should be affirmed have also been examined and found to be without merit. The material facts, as disclosed by the evidence, were either admitted or undisputed; and, under a proper construction of the loan contract, there was nothing to submit to the jury, as it clearly appears that the policy lapsed, because of the nonpayment of premiums, several months before the insured died. The motion, therefore, for a directed verdict should have been granted. This conclusion makes it unnecessary to consider the second question stated.

The judgment of the Circuit Court is reversed, and the case is remanded, with instructions to enter judgment for the defendant.