15224

RICE v. PALMETTO STATE LIFE INSURANCE COMPANY

(13 S. E. (2d), 493)

*Messrs. Tobias & Turner* and *Love & Thornton,* for appellant,

*Messrs. Wyche, Burgess & Wofford,* for respondent,

March 4, 1941.

The opinion of the Court was delivered by MR. ASSO-
CIATE JUSTICE BAKER.

On May 27, 1935, the Palmetto State Life Insurance
Company issued a policy of insurance upon the life of one
Louise Rice, the respondent herein, for the sum of $306.00.
The policy was taken out by the respondent's mother, Mrs.
Lillian Liester, who was named beneficiary, who paid the
premiums, and who retained the policy in her possession.
The policy contained neither sick nor accident benefits, nor
cash surrender nor loan values. It was a straght life policy
payable to Mrs. Liester upon the death of her daughter, the
respondent.

The policy did contain a provision, however, that if, while
it was in force, the insured should become totally disabled
and unable to perform work of any kind the appellant com-
pany would waive the payment of further premiums. On
June 30, 1936, the insured filed with the appellant her claim
for a waiver of premiums, together with proof of continuing
disability, and on July 15, 1936, the company, by endorse-
ment attached to the policy, waived the payment of any fur-
ther premiums.

This waiver of premiums was to continue only so long as
the insured was totally disabled, and from time to time in
this, as in other cases of waiver of premiums, the company
checked up to ascertain whether the disability continued or
whether the insured had regained her health, in which latter
event she would be required again to commence the payment
of premiums.

In December of 1938 the defendant company had information that Louise Rice, the insured, and the respondent herein, had been discharged from the hospital where, during the waiver of premiums period she had been confined, and was able to resume her duties; whereupon, the appellant sent Mr. A. N. Walker, its investigator, to check into the exact condition of the insured's health.

The respondent was not at that time living with Mrs. Liester, her mother, and the beneficiary of the policy as aforesaid, but Mr. Walker went to Mrs. Liester's home for the purpose of ascertaining where Mrs. Rice lived. Mrs. Liester was not at home when he first went there, she being at her work in a cotton mill, but from a conversation had with another of her daughters, Mr. Walker returned to Mrs. Liester's home on the afternoon of the same day (December 21, 1938) and found her lying across the bed resting. There is a conflict in the testimony as to who broached the subject of Mr. Walker undertaking to procure for Mrs. Liester a cash settlement of the policy which she was carrying on the life of Mrs. Rice, but this is more or less immaterial. The fact remains that Mrs. Liester and Mr. Walker discussed if appellant company would be interested in paying some amount at that time and cancelling the policy, and Mrs. Liester, a witness for respondent, testified that Mr. Walker told her that it didn't make "two cents difference to the Company" if she cashed it or didn't; that it was a matter for her to decide; that she had thought about cashing it and reached the conclusion to take a cash settlement if appellant company would make such a settlement. She told him that she had had sickness in the family, needed the money and needed it badly, which was the truth. At that time Mr. Walker told her that Mrs. Rice would have to sign the release.

Respondent's cause of action is predicated upon the alleged statements of Mr. Walker to respondent when he took up with her on December 22, 1938, the matter of signing a release and allowing her mother to make a cash settlement, respondent stating in her complaint that she signed the re-

lease and agreed to the cancellation of the policy and the payment of the consideration therefor to her mother upon the false and fraudulent statement of Mr. Walker to her that her mother had returned from her work sick, was then confined to her bed with a serious illness and would have to go to the hospital unless she received prompt rest and medical care, and that if she would sign the release and agree to the cancellation of the policy he could secure some money on the policy, which would prevent respondent's mother from being confined in a hospital; and upon a trial of the case she testified in effect to the said allegations of her complaint. Incidentally it should be here mentioned that respondent, during the course of her testimony, and while referring to the conversation she had with Mr. Walker, stated: "I had a card from my mother the day before and she told me she was working every day and was—" when she was interrupted by an objection by one of appellant's counsel, and the Court ruled that she had to confine her testimony to what she knew of her own knowledge. Mr. Walker denied stating to Mrs. Rice, the respondent, anything other than the conditions as he actually found them at the home of Mrs. Liester and the statements which he termed a "message" from Mrs. Liester to Mrs. Rice as to her desire to get a cash settlement out of the policy.

Following the execution of the release by respondent, the consideration for which was the payment to respondent's mother of the sum of $100.00, Mr. Walker returned to the home of Mrs. Liester, there procured her signature on the release and paid to her the sum of $100.00, which was at that time, and has been at all times since, a satisfactory settlement insofar as Mrs. Liester was and is concerned.

On the afternoon of the day respondent signed the release (December 22, 1938) her husband came to her home and she told him about the settlement and says she became dissatisfied thereabout for the reason that she learned that the statements made to her by Mr. Walker which induced her to consent to sign the release and consent to the cancel-

lation of the policy on her life was untrue, and wrote a letter on December 23, 1938, to the manager of appellant at Greenville, S. C., forbidding appellant to make any settlement with her mother "due to the fact that Mr. Walker, your Company's agent made false statements in regards to my mother's health." However, when this letter was delivered to the district agent or manager of appellant in Greenville, S. C., the money had already been paid to Mrs. Liester. Upon the return of Mr. Walker from a short Christmas holiday and upon learning of this letter, he went to see Mrs. Liester and offered to return the release and reinstate the policy if she was not entirely satisfied with the settlement; provided, of course, the $100.00 was refunded to appellant company, but Mrs. Liester did not so desire, expressing her satisfaction with the settlement.

On the 10th day of January, 1939, respondent instituted proceedings in the Court of Common Pleas for Greenville County attacking the validity of the release and receipt which had been executed by her, claiming that said release and receipt had been obtained by fraudulent misrepresentation of facts and that she had been overreached by the agent of appellant, but she did not return or tender the sum of $100.00, which had been paid to her mother. Upon the trial of that case, the presiding Judge ordered a nonsuit upon the ground that the $100.00 which appellant had paid in consideration for the release and receipt, which respondent signed, had never been returned or tendered to the appellant, which sum, as a matter of law, would have to be returned or tendered before any action could be maintained by the respondent attacking the validity of the release and receipt which she had signed.

On the afternoon of November 30, 1939, Honorable Hubert E. Nolin, a practicing attorney in the City of Greenville, S. C., but having no connection with respondent's case as attorney, went to the office of Mr. W. W. Jones, the manager of the Greenville district office of appellant, and advised Mr. Jones that as a representative of the respondent

he desired to return to Palmetto State Life Insurance Company, appellant herein, the sum of $100.00 which the appellant had paid on December 22, 1938, in consideration for the release and cancellation of the policy of insurance involved in this action, and handed him a letter from Honorable Alfred F. Burgess and Honorable Thomas A. Wofford, attorneys for Mrs. Louise Rice, addressed to Palmetto State Life Insurance Company, reading as follows:

"In re: Policy No. 254262-B-

"Louise Rice ·

"On December 22, 1938, one of your agents procured a release from Mrs. Louise Rice of all her rights under the above numbered policy, upon certain statements which Mrs. Rice claims were false and fraudulent.

"The consideration of $100.00 was not paid to Mrs. Rice, but to her mother, Mrs. Lillian Liester. However, as counsel for Mrs. Rice, we are herewith tendering you the sum of $100.00 by Hubert E. Nolin, Attorney at Law, Greenville, South Carolina, this being the amount paid to Mrs. Liester for said release. Please give Mr. Nolin a receipt for the $100.00."

The tender of $100.00 was made Mr. Jones after he had read the letter from Messrs. Burgess and Wofford. Mr. Jones immediately called by 'phone the local attorney of appellant in Greenville, Honorable James L. Love, and then informed Mr. Nolin that he had no authority to accept the money but that he would communicate with the home office, and if they so desired he would give him a receipt and accept the money later. Mr. Jones then communicated with the home office at Columbia, S. C., by telephoning to Honorable Ashley C. Tobias, general counsel for appellant, and wrote a letter to Messrs. Burgess and Wofford as follows:

"Re: Policy No. 254262-B

"Louise Rice

"Something like thirty minutes ago you sent to my office by Mr. Hubert E. Nolin $100.00, accompanied by your letter.

"Not having authority to accept the tender or to reinstate the policy, as stated I immediately communicated with the Home Office. I now advise you that I have been authorized to accept the $100.00 and to further say to you that we will immediately get authority from the Court to obtain the original policy and the original release in question and deliver both of them to you, and thereafter the policy will be understood to be in full force and effect.

"Of course, we do not admit that there has been any fraud or unfair advantage taken in connection with the entire matter, and this acceptance of the $100.00 is in keeping with the previous statements made by our Mr. A. N. Walker who offered to reinstate the policy on two or more occasions if the $100.00 was returned."

This letter was forthwith delivered to Mr. Love for delivery to Messrs. Burgess and Wofford, who went to the offices of Mr. Burgess and undertook to deliver the letter, but Mr. Burgess was not in his office. The following letter written on the same afternoon (November 30, 1939) by Mr. Love to Mr. Burgess, gives the further history of what transpired soon after the alleged tender:

"In order to avoid any possible misunderstanding in the future, I am writing this letter to tell you exactly what happened this afternoon in reference to your tender in the case of *Rice v. Palmetto Life Insurance Company*. When you had Mr. Hubert Nolin take your letter and the $100.00 to Mr. Jones, he told Mr. Nolin that he had no authority to reinstate the policy, or to act in reference to offer, but would communicate with Home Office and advise you. He did communicate with the Home Office immediately, and pursuant to authority extended wrote you a letter within less than 30 minutes.

"As requested, I took the letter to your office and was told by your secretary that you were out, but that you would return within 10 minutes. I went back across the street and stood in Thosam's cigar store, and awaited your return. In

a few minutes, thinking that you were probably in, I went back and was advised by Mr. Hinson's stenographer that you had not returned. Again I returned and stood on the opposite side of the street and watched for your return. At 5:25 p. m., I decided to return to your office and leave Mr. Jones' letter on your desk. Just before I reached the top of the stairs you rushed by me, refused to accept the letter as I attempted to hand it to you. One of your stenographers looked out of the door and I gave her Mr. Jones' letter, and requested her to place it on your desk.

"Earlier in the afternoon I had told Mr. Nolin that the company was willing to accept the money, and I assume that he had communicated this information to you, prior to my several visits to your office.

"In order to be certain that you do receive this letter, I am herewith enclosing herewith an additional copy of the letter written to you by Mr. W. W. Jones."

The present action was commenced on December 1, 1939, one day after the alleged tender of a return of the $100.00 paid for the release and cancellation of the policy. Upon a trial of the case and at the conclusion of plaintiff-respondent's testimony, the defendant-appellant moved for a nonsuit upon several grounds, the fourth reading:

"That no sufficient or proper tender has been made by the plaintiff to the defendant, in that:

"(a) The tender was not made to a party with authority to accept or reject said offer;

"(b) That said offer was immediately withdrawn without granting to the tenderee any time, or a reasonable time within which to accept or reject.

"(c) That during the same afternoon, within approximately one hour after the offer was made, defendant notified the same person making the offer of its written acceptance, but plaintiff declined to make the tender good.

"(d) That the defendant has repeatedly offered to accept the tender but plaintiff has withheld payment of the $100.00."

Upon the conclusion of all of the testimony, appellant moved for a directed verdict, but it is unnecessary to set out the grounds thereof.

Both motions were refused and the case was submitted to the jury, which returned a verdict in favor of plaintiff-respondent in the sum of $206.00 actual damages and $749.00 punitive damages. It is from such judgment that the appeal comes to this Court on appropriate exceptions.

The respondent takes the position that one of the questions involved is: "Is it necessary for the plaintiff to return the consideration for a release obtained by fraud when the plaintiff never received the consideration?" This issue was decided in the trial of the first case when an order of nonsuit was granted on the ground that respondent had not returned the $100.00 to appellant or tendered a return thereof, and there being no appeal from such order of nonsuit, irrespective of the correctness thereof, it became the law of the case.

The paramount issue raised by this appeal is stated by respondent as follows: "Did the plaintiff make a valid legal tender to the defendant of the consideration paid for the release she signed?" And by the appellant: "What requirements must a tender meet to make it valid, effective and binding?"

We have hereinbefore related the facts and circumstances under which the sum of $100.00 was offered to the manager of the Greenville office of appellant, and his action thereabout. The respondent very frankly stated to the Court that in making the alleged tender of the $100.00, it was not for the purpose of restoring the status as it existed prior to the signing of the release and cancellation of the policy, but for the purpose of enabling respondent to institute an action for the fraudulent cancellation of the insurance contract.

Except where it is desired to discharge the potency of a lien, we have always understood that the sole purpose, object and effect of making a tender is to re-

store the *status quo* as it had existed, and in this instance, the acceptance of the $100.00 by a duly authorized agent of appellant would have automatically restored the effectiveness of the insurance policy, and cancelled the release which respondent had signed.

It of course cannot be seriously contended that the manager of the Greenville district office of appellant was such an agent of appellant as would give him the authority to either reject or accept an amount of money which would be binding upon appellant as relates to this case until he had specific authority conferred upon him. But respondent argues that even after Mr. Jones, the manager of appellant's Greenville office, had authority to act for appellant, he offered to accept the $100.00 conditionally, that is, that the appellant be allowed to reinstate the policy and cancel and return the release. This is only that which the law would have done, and appellant was trying to do no more at that time than good morals and equity dictated. We can well appreciate the situation in which appellant would have been placed if it had not offered to reinstate the insurance policy and cancel the release signed by appellant contemporaneously with the acceptance of the $100.00.

Even had Mr. Jones in the first instance possessed the authority to act for appellant, he would have had a reasonable time in which to accept or decline a refund of the $100.00, and this he was not allowed. After the tender was made by Mr. Nolin, it was not held open, and as a matter of fact, as appears from the record, notice of the acceptance thereof conditionally or unconditionally was apparently attempted to be avoided.

Under the facts of this case, we hold that a valid, effective and binding tender was not made.

It being the policy of the law to discourage rather than promote litigation, we are actuated to extend our discussion of this case. An action for actual damages, or for actual and punitive damages, must be founded on proof of legal injury and actual damage. It is funda-

mental that these two elements must concur. In the absence of unusual circumstances, the violation of a legal right without resulting damage is *damnum absque injuria* in the sense that no cause of action is maintainable.

Here the policy was taken out without any action on the part of the respondent. She was not helped when the policy was issued, because the proceeds would in no event be payable to her. She was likewise not hurt when it was cancelled, and for the same reason. If she founded her action on the theory that the policy was so drawn as to entitle her to demand a change of beneficiary, or to assign the policy for her benefit, she would be asserting a right or benefit founded upon an action that would be fraudulent against the mother who took out the policy on her own initiative and for her own exclusive benefit, and paid all of the premiums which were paid on the same.

■ The rule that where there is a right to change the beneficiary, the beneficiary has no vested interest applies of course to the usual case in which the policy was taken out by the insured, or to a case where the insured rightly or wrongly exercises the right to change the beneficiary. Thus in the present case, if the insured had undertaken to change the beneficiary, the Court would be bound by the holding in such cases as *Davis v. Acacia Mutual Life Insurance Company,* 177 S. C., 321, 181 S. E., 12, if any complaint were made by the mother. But that is not the legal situation with which we are here concerned.

■ Taking the facts as they existed at the time of the surrender of the policy, the respondent lost nothing because, except through the perpetration of an act of fraud against her mother, she had nothing either tangible or intangible.

On the respondent's own statement and theory, the policy is a contract between the insurer and the insured (at the time of cancellation) for the benefit of a third person, the mother. While the contract could have been changed by the insured,

it had not in fact been changed. And since a definite pecuniary interest on the part of the mother had arisen by reason of her payment of the premiums, the contractual parties to the contract for the purpose of cancellation were the mother and the insurer. This cannot be altered by the fact that the contract could have been changed by the insured on her application. It had not in fact been so changed:

Undoubtedly the intent of all three parties was that the contract of insurance should be issued on the life of the plaintiff for the purpose of enabling the mother to obtain the benefits thereof. This situation existed at the time of the cancellation of the policy. There is no legal rule to prevent this intention from being given effect and when it was carried out through the payment of a consideration to the mother for the cancellation of the contract, the intention of the insured, as well as that of the insurer and the beneficiary, had been given effect.

A distinction is to be drawn between the surrender of the policy and the change of beneficiary.

For the purposes of a change of beneficiary, the rights of the existing beneficiary are inchoate and may be nullified by action on the part of the insured in strict accordance with the terms of the policy. But so long as there is no change of beneficiary, the rights of the beneficiary are tangible and are protected by the law. *Holder v. Prudential Insurance Co., 77* S. C., 299, 57 S. E., 853. That is the rule even where, as in the *Holder case,* the premiums are paid by the insured; the rights of the beneficiary would be even greater where he paid the premiums.

It was error to hold that a proper and legal tender of the $100.00 had been made, and the trial Court should have granted appellant's motion for a nonsuit.

Reversed.

MR. CHIEF JUSTICE BONHAM and MR. ASSOCIATE JUSTICE FISHBURNE concur.