140 So.2d 340 (1962)
Robert B. HUGHES, Appellant,
v.
PROFESSIONAL INSURANCE CORPORATION, Appellee.
No. C-399.
District Court of Appeal of Florida. First District.
April 26, 1962.
Rehearing Denied May 15, 1962.
*341 Moore & Austin, Jacksonville, Parker, Foster & Madigan and Seymour H. Rowland, Jr., Tallahassee, for appellant.
Boggs, Blalock & Holbrook, Jacksonville, for appellee.
RAWLS, Judge.
Plaintiff-appellant, Robert B. Hughes, appealed from an order striking his demand for attorney's fees and from a summary final decree entered in favor of defendant-appellee, Professional Insurance Corporation.
Hughes filed his petition for declaratory judgment alleging therein the following basic facts: that on or about December 26, 1947, he purchased from Professional a single premium life insurance policy ($10,000) and on the same day obtained a loan from Professional in the sum of $4,270.00, said loan being evidenced by a note payable to Professional bearing interest at the rate of four per cent per annum, the note further providing for assignment of said policy *342 as security for payment of same; that on November 13, 1959, Professional informed him that according to the terms of said single premium policy the interest on the aforementioned note should have been five per cent per annum instead of four per cent per annum, and demanded payment in the sum of $713.64 (this being the difference between four per cent and five per cent from December 26, 1947, until November 13, 1959); that he was faced with the loss of protection of this insurance policy and prayed for attorney's fees and general and special relief.
Professional answered by affirmatively alleging that the policy provided for payment of interest at five per cent per annum and stated that through error or otherwise the note provided that interest would be payable at the rate of four per cent per annum instead of the rate of five per cent as required by the policy, and that the policy prevailed over the note. It further affirmatively alleged that said policy was issued after approval by the State Insurance Commissioner pursuant to the provisions of Section 635.175[1] and that Professional was not authorized to make a loan at any other interest rate than that contained in the policy; that Section 635.02, F.S., 1941, prohibits a life insurance company in this state from discriminating or making any distinction between insurants of the same class, and that the lower interest rate in the loan note did so discriminate; that Section 625.19 prohibited an insurer from making any rebate to an insured on premiums or earnings; that Section 626.08 provided authority for the State Insurance Commissioner to revoke an insurance company's license to do business in this state in violation of the state insurance laws; that the insurance laws of the State of Florida require investing enough of the premiums received from the policies sufficient to pay the cash surrender value as it accrues, and that such reserves must be so invested as to earn five per cent interest, and, therefore, four per cent interest as contained in the subject loan note does not meet the reserve requirements of the insurance laws of the State of Florida. Professional attached to its answer a letter signed by one J.R. Reinhardt as Senior Examiner of the Insurance Commissioner.
Upon Professional's motion to strike, the Chancellor deleted plaintiff's claim for attorney's fees. Professional then moved for a summary final decree and attached thereto affidavits of J.R. Reinhardt and E.E. Gantner.
The substance of Reinhardt's affidavit was that he had been employed by the Florida Insurance Department for five years and now holds the position of Senior Examiner for such department, and in this capacity during the year 1959, examined Professional's books and records and discovered the single premium life insurance policy issued to Robert B. Hughes for a full single premium of $4,273.56, with a loan note given for $4,270.00, bearing interest at four per cent per annum; that the policy provided for five per cent interest to be paid; that there had been no approval by the Florida Insurance Commissioner in the reduction of the rate from five per cent to four per cent; that this violation of law in the interest rate was not discovered by previous examinations of Professional by the Florida Insurance Department; that at the time the policy and loan note were issued and executed, Professional was owned and managed by interests other than the present management, and that the present management was apparently unaware of the difference between the interest rate specified in the policy and the interest charged in the loan note; that the Florida Insurance Department ruled that the aforesaid difference in interest rates charged was a discrimination by the insurants of the same class as prohibited by Florida Statutes 635.02, and ordered Professional Insurance Corporation to correct this discrepancy *343 in the interest rate and require Robert B. Hughes to pay interest on the aforesaid policy loan note at the rate of five per cent; that as basis for the aforesaid ruling and order by the Florida Insurance Department the following statutes served as authority: §§ 635.175 [sic], 635.19 [sic], 635.02 F.S. (setting out provisions of statutes), and that the aforesaid ruling and order was made in the performance of the duty and authority vested in the Florida Insurance Department. Mr. Reinhardt attached to this affidavit a copy of his letter dated November 24, 1959, to Professional Insurance Corporation. This letter was signed by Mr. Reinhardt directing Professional Insurance Corporation to collect premiums from Hughes computed retroactively at five per cent per annum and outlined substantially the contents of his foregoing affidavit.
Affidavit of E.E. Gantner stated in substance that he had been employed by Professional Insurance Corporation since 1947 and was now serving as secretary of same; that the life insurance policy was issued to Robert B. Hughes on or about December 26, 1947, calling for five per cent interest on all loans, and that the same day the loan note was given by Hughes with interest at the rate of four per cent; that Hughes was an employee of Professional Insurance Corporation at the time the policy was issued; that at the time the policy and note were issued and executed Professional Insurance Corporation was owned and managed by interests other than the present management; that the present management was unaware of the difference in the interest rate in the policy and the loan note until so advised by Mr. Reinhardt; that pursuant to the aforesaid ruling (Mr. Reinhardt's letter), Professional notified Hughes on November 13, 1959, to comply with the insurance laws of the State of Florida by paying the accrued difference in the interest rate of five per cent and four per cent; and that Hughes had failed to comply with said request, such non-compliance on Hughes' part subjecting Professional Insurance Corporation to the possibility of action by the State Insurance Commissioner revoking its authority to do business in Florida.
Opposing affidavits to motion for summary judgment were filed by John R. Sutherland, C.E. Waller and Hughes. Sutherland's affidavit stated in substance that he is executive vice president and director of Universal American Life Insurance Company, Atlanta, Georgia; that from 1945 to 1952 he was employed by Professional with the primary responsibility of appraising risks for life and accident and health insurance and computing reserves; that in 1947 Professional Insurance Corporation offered for sale a series of single premium life insurance policies and a considerable volume was sold of single premium life insurance policies; that the purpose of the single premium life insurance policies being offered and issued was to increase the total volume of life insurance in force in order to enable Professional to be classified under the Internal Revenue Statutes in a more favorable tax classification, and that the officers and majority of directors approved the issuance of said series of single premium life insurance policies with the provision that loans would be made on same at four per cent interest; and that through inadvertent error or otherwise the printed policy terminology calling for five per cent per annum on loans was not physically changed; that these policies were offered and emphasized for sale throughout the entire sale organization of Professional; that Hughes' policy loan note was included in the assets of Professional and in the reserve computation of Professional as of December 31, 1947, and duly reported to the Florida Insurance Department.
Waller's affidavit stated in substance that he was the original principal organizer, largest single stockholder, president and chairman of the Board of Directors of Professional from the date of its charter in 1936 until 1951; that during the year 1947 a large number of single premium policies *344 were offered and issued to the general public through Professional's entire sales organization of more than fifty salesmen, and all such single premium policies were offered and made available to the general public whereby a loan would be made at four per cent interest upon assignment of the policy as security; that other legal reserve life insurance companies make loans to policy holders under certain series of policies at a rate of interest less than the rate specified in the policy; that the four per cent loan exceeded required earnings by the Florida Insurance Department of one per cent, resulting in a net profit of $42.70 each year to Professional.
Hughes' affidavit corroborates the issuance of the policy and the execution of the loan note and further states that if the loan had been made with the interest rate at any rate larger than four per cent that it would have been to his advantage to have bought whole ordinary life insurance for the same face value.
Material findings of the Chancellor were:
1. That there is no genuine issue of material facts.
2. That the interest rate of four per cent as provided in the loan note constitutes a discrimination in favor of Hughes against other insurants of the same class, contrary to former Section 635.02, F.S.[2]
3. That the interest rate of four per cent provided for in the loan note also constitutes an unlawful rebate of interest or other benefits accruing from the contract to the plaintiff contrary to former 625.19, F.S.[3]
4. That the interest rate provided for in said policy loan note was illegal under the laws of Florida.
5. That the policy is valid and subsisting and was not illegal from its inception because of the error in the interest rate on the policy loan; that plaintiff has had the life insurance coverage of the policy from its inception and plaintiff is not entitled to recission of the policy since its inception.
The Chancellor entered a summary final decree based upon the above findings in favor of Professional and ordered Hughes to pay interest at the rate of five per cent on the policy note until said note is paid in full. In determining whether or not the Chancellor was correct in entering his summary final decree it is necessary to analyze the proofs submitted together with the laws of Florida as they existed on December 26, 1947, the admitted date of all of the instruments making up the contract, including the policy and the loan note.
*345 We do not find in this record any competent evidence to sustain the Chancellor's finding as to discrimination between insurants of the same class. The uncontradicted proof is that Professional offered and emphasized for sale and did issue a large number of such single premium life insurance policies to the general public during the latter part of the year 1947, and that such policies were offered on the basis of a loan note at four per cent per annum. The Chancellor also found that such action constituted an unlawful rebate of interest contrary to former Section 625.19 F.S. Again, the record is silent as to competent substantial evidence to support this finding. The sections of the Florida Statutes existing at the time the contract was executed and cited in the Chancellor's decree were enforceable by criminal proceedings against the offending insurance company and granted no authority to the Insurance Commissioner to exercise any discretionary powers until after the insurer was convicted of a violation.[4] Nowhere in such statutes was any penalty provided for insurants purchasing policies in violation of statutory provisions.
We cannot reconcile the Chancellor's finding that the interest rate in the policy loan note was illegal under the laws of the State of Florida and his further concurrent finding that the policy is valid and subsisting and was not illegal from its inception because of the error in interest rate on the policy loan. The proof in this record reveals that there was no error as to the interest rate upon the issuance of this policy, but conversely conclusively shows that there was a meeting of the minds of the parties and performance by each party for many years.
Seemingly, the Chancellor placed great weight on the activities of the office of the Florida Insurance Commissioner in this matter. With great restraint, we dispose of Mr. J.R. Reinhardt's disposition of the legal questions involved here, his exparte determination as to what was known by "old management and new management", and his judicial decision directing Professional to collect interest retroactively, by simply saying that this jurisdiction continues to operate under a concept of due process of law and constitutional precepts; not under a "law" whereby an individual employee of an administrative agency may at his discretion dispose of a matter subject to judicial determination. If Professional Insurance Corporation has participated in a violation of law, then it is incumbent upon the Insurance Commissioner to take action against Professional in accordance with procedures established by law; he is not charged with the judicial determination of the rights of a policy holder.
It is a cardinal rule in the construction of contracts that the intention of the parties thereto is to govern. Thus, in construing a contract the leading object is to ascertain such intention, and to effectuate it.[5] When an agreement has been made in or by two or more documents, its interpretation or construction should be obtained from construction of both.[6] Rights and liabilities of the parties to an insurance contract are governed by the contract made by them, whether evidenced by one or several written instruments. The purpose of such construction of such contracts is to ascertain the intention of the parties, and in construing such contracts, they should be construed as a whole, giving effect to every portion so far as possible, including all accompanying papers, riders, and endorsements constituting parts of the contracts.[7] The loan note involved in this litigation was executed concurrently with delivery and reassignment of the policy; competent undisputed evidence presented to the Chancellor showed conclusively that it *346 was the intention of Professional to modify the policy provision with respect to the rate of interest on the loan and to charge a rate of four per cent per annum; and it is likewise undisputed and not controverted that it was Hughes' intention to pay four per cent per annum on the loan and that he did pay said rate for a period of approximately twelve years. Professional offered a reduced rate of interest on the proposed loan to induce Hughes to purchase the policy; Hughes executed the loan note; complied faithfully with his agreement with Professional; Professional was bound  Hughes was bound.
Appellee asserts in its brief that the law is well settled that the terms of a policy must prevail over a collateral instrument in a situation as exists herein and cites Fithian v. North-Western Life Insurance Company[8] as one of its authorities. The Fithian case dealt with the question of whether failure to pay interest on a premium note constituted forfeiture of a policy, when a provision of the loan note stated: "Which interest shall be paid annually, or the policy shall be forfeited." The Court in that cause found that such provision was manifestly inconsistent with the terms of the policy and clearly bottomed its decision upon the following statement:
"Defendant claims, secondly, that, by the terms of the premium note, the policy was absolutely forfeited for nonpayment of the interest due at the expiration of the second year. The language used is: `Which interest shall be paid annually, or the policy be forfeited.' If these words are to be taken literally, without any reference to expressions found elsewhere in the contract, the defence may be sufficient. But if they are repugnant to other provisions, which exclude the possibility of forfeiture for such a cause, the whole contract must be construed most strongly against the insurer, who has chosen, in his own interest, all the forms of expression. At the same time, if there is a reasonable interpretation whereby all the provisions may be harmonized, that must be adopted." [Emphasis supplied.]
And appellee further cites Davis v. Acacia Mutual Life Insurance Company,[9] as authority that the terms of a policy must prevail over a note. The court in finding that there was no conflict between the loan note and the policy stated:
"It seems clear, therefore, that the provisions embodied in the policy and those contained in the loan note together make up the completed contract of loan between the parties, and must be considered together in determining and fixing their rights thereunder. Of course, if there were any conflict between the two, the policy would unquestionably control."
In view of the foregoing finding it is obvious that the statement "Of course, if there is any conflict between the two, the policy would unquestionably control. * * *" is gratuitous on the part of the author, is obiter dictum, and stands as no authority, especially considering the absence of any citation for the statement.
Courts of other jurisdictions have considered similar problems. In Metropolitan Life Ins. Co. v. Calkins,[10] a Georgia Court of Appeals had before it a policy purchased by the insurant which provided for loans to the owner of the policy, interest on any such loans to be payable in advance. The subsequent loan note executed provided "Said loan shall bear interest from the date the loan is granted at the rate provided in said policy, payable annually on the anniversary *347 date of the policy." The Court in holding that the loan note modified the terms of the policy and thereby prevailed stated: "It is true that the provisions of the policy loan may be construed that the company had the right to demand interest in advance * * * but, notwithstanding the rights of the company under the policy as to this, the parties had a right, in a supplemental agreement as to this provision of the policy, to change the right as to the time of payment of interest."
Other decisions found bearing upon the issues involved are those of the Texas jurisdiction. The Court of Appeals of Texas[11] was confronted with the following question: Do the provisions in a premium note constitute an enforceable agreement between the company and the insured? There, appellees contended that the Texas statutory provisions precluded a subsequent agreement modifying the terms of the policy. The court in dealing with this issue stated:
"But aside from these considerations, the extension agreement represented by the note was binding upon the insurance company, regardless of whether it violated either or both the statutory articles invoked. American Nat. Ins. Co. v. Tabor [111 Tex. 155] 230 S.W. 397. And if the insurance company was bound, then clearly the insured was bound also. If the latter is permitted to invoke the extension agreement, and avoid the consequences of lapse by virtue of failure to pay the premium in accordance with the terms of the policy, the insured must take the extension agreement charged with its burdens and [sic] well as clothed with its benefits. If held valid for one purpose, it must be held valid for all purposes. If void as to the obligations imposed on the insured, it is void as to the benefits accruing to the insured."
We find that the doctrine enunciated in the Texas jurisdiction to be the better rule for application to facts such as those presented in the case at bar.
As we view the primary issue, it boils down to a question of competent evidence as to "classes of insurants', together with Hughes' knowledge, activities and efforts toward procuring a policy that was discriminatory as to insurants of the same class, or his efforts to procure an unlawful rebate of interest. The statutory provisions in effect at the time of this transaction were all directed toward insurance companies and we find no such affirmative expression as to policy holders, without knowledge of the unlawful action of such companies. It would be a sad state of affairs if insurance salesmen could offer for sale and insurance companies issue to the general public a large number of policies, collect the premiums for many years, and then be permitted to cry in anguish that they were not aware of activities of former management and now desire to rewrite their contracts with the active assistance of an arm of the state government.
The final material point is directed to the action of the Chancellor in striking the portions of Hughes' complaint requesting the assessment of attorney's fees against Professional. Professional states in its brief that it has found itself "mousetrapped" in a situation for which the present management of the company is in no way responsible, that the State Insurance Department can apply pressure against it if it failed to comply with the order to collect the one per cent difference in interest. Insurance companies are strictly regulated and accountable to regulatory agencies of the state and this corporation was put on notice of such a state of affairs when it elected to engage in this business. The legislature of this state by statute[12] has made insurance companies liable for attorney's *348 fees in certain instances. In view of our decision herein, this question had not ripened for final disposition, therefore, the Chancellor erred in striking Hughes' demand for attorney's fees.
The evidence upon which the summary final decree was based was insufficient, we, therefore, reverse with directions to the Chancellor to reinstate Hughes' allegation for attorney's fees, to take testimony on the issues, and for further proceedings in accordance with this opinion.
WIGGINTON, Acting C.J., and STURGIS, J., concur.
NOTES
[1] No such section appears in F.S. 1941, 1947 Supplement, nor in F.S. 1961. Apparently Professional was referring to Section 635.17-1.
[2] The Chancellor found this section was brought forward as § 626.0610. However, there is a material difference in these sections. 635.02 F.S.: "No life insurer doing business in this state shall make or permit any distinction or discrimination between insurants of the same class and equal expectation of life as to the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes. Nor shall any such insurer, or any agent thereof, make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon."
[3] The Chancellor found this section was brought forward as § 626.0611. However, there is a material difference in these sections. 625.19 F.S.: "No insurer, by itself or any other party, and no insurance agent, solicitor or broker, personally or by any other party, shall offer, promise, allow, give, set off or pay, directly or indirectly, as inducement for insurance on any risk in this state now or hereafter to be written, any rebate of, or part of the premium payable on the policy, or on any policy, or of agent's commission thereon, or earnings, profit, dividends or other benefits founded, arising, accruing or to accrue on such insurance or therefrom, or any other valuable consideration or inducement to or for insurance which is not specified, promised or provided for in the policy contract of insurance."
[4] §§ 635.06 F.S. (1947 Supplement) and 625.21(3) F.S. 1941.
[5] 7 Fla.Jur., Contracts, § 75, p. 139.
[6] 5 Fla.Law and Practice, Contracts, § 67, p. 44.
[7] Konrad v. Hartford Acc. & Indemnity Co., 11 Ill. App.2d 503, 137 N.E.2d 855.
[8] Fithian v. Northwestern Life Ins. Co., 4 Mo. App. 386 (1877).
[9] Davis v. Acacia Mut. Life Ins. Co., 177 S.C. 321, 181 S.E. 12 (1935).
[10] Metropolitan Life Ins. Co. v. Calkins, 66 Ga. App. 245, 17 S.E.2d 594, 597 (1941).
[11] Southwestern Life Ins. Co. v. Powers, 100 S.W.2d 201, 204 (Tex.Civ.App. 1936).
[12] § 627.0127 F.S. 1961, F.S.A.